IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10797

_____

D.C. Docket No. 7:15-cv-00013-HL-TQL

DEMETRUIS DELFON CARTER,

Plaintiff - Appellant,

versus

WARDEN MARTY ALLEN,
Individually and in his official capacity,
OFFICER ANDERSON,
Individually and in his official capacity,
OFFICER WESTLAKE,
Individually and in his official capacity,
OFFICER BARBER,
Individually and in his official capacity,

Defendants - Appellees,

DEPUTY WARDEN CALVIN ORR,
individually and in his official capacity,
et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

Before ED CARNES, Chief Judge, TJOFLAT, MARCUS, WILSON, WILLIAM PRYOR, MARTIN, JORDAN, ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, and GRANT, Circuit Judges.

BY THE COURT:

A petition for rehearing having been filed and a member of this Court in active service having requested a poll on whether this case should be reheard by the Court sitting en banc, and a majority of the judges in active service on this Court having voted against granting a rehearing en banc, it is ORDERED that this case will not be reheard en banc.

WILLIAM PRYOR, Circuit Judge, respecting the denial of rehearing en banc:

I agree with our decision not to rehear this appeal en banc to overrule *Al–Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011), for a practical reason. As Chief Judge Carnes once explained, "when deciding whether to take the extraordinary step of going en banc," we should remember that "[o]ur role is to determine whether the plaintiff before the court is entitled to relief." *Boxer X v. Harris*, 459 F.3d 1114, 1116 (11th Cir. 2006) (Carnes, J., concurring in the denial of rehearing en banc). And nobody argues that Demetruis Carter is so entitled.

To be sure, Carter and my dissenting colleague raise serious questions about our current interpretation of the "Limitation on recovery" subsection of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e). But even if our interpretation deserves to be reconsidered, the vehicle problems in this appeal make the issue academic. That is, even if we overruled *Al–Amin*, it would make no difference to Carter or to the judgment against his claim. Indeed, an en banc decision overruling *Al–Amin* in this appeal would either be an advisory opinion or, if not, would be as close to the line as we could possibly go without crossing it. And if the issues Carter has presented are exceptionally important, then surely there must be appeals in which they would matter to the outcome. If we are to reconsider our interpretation of section 1997e(e), we should do so in one of those appeals, not this one.

3

Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." It is universally agreed that the words "action . . . for . . . injury suffered" refer to claims for damages, so this provision places a conditional limitation on the categories of damages that may be recoverable by prisoners.

But as Carter explains in his petition for rehearing, our understanding of the scope of the limitation differs from that of our sister circuits in two ways. First, although four other circuits agree with us that section 1997e(e) bars compensatory damages for First Amendment claims unaccompanied by a showing of physical injury, *see Geiger v. Jowers*, 404 F.3d 371, 374–75 (5th Cir. 2005); *Royal v. Kautzky*, 375 F.3d 720, 722–23 (8th Cir. 2004); *Searles v. Van Bebber*, 251 F.3d 869, 875–76 (10th Cir. 2001); *Allah v. Al–Hafeez*, 226 F.3d 247, 250–51 (3d Cir. 2000), five others have held that First Amendment claims permit compensatory damages that redress the injury to the liberty interest itself—independent of any physical, mental, or emotional harm—and are, therefore, not subject to the limitation on recovery, *see Wilcox v. Brown*, 877 F.3d 161, 169–70 (4th Cir. 2017); *Aref v. Lynch*, 833 F.3d 242, 267 (D.C. Cir. 2016); *King v. Zamiara*, 788 F.3d 207, 212–13 (6th Cir. 2015); *Rowe v. Shake*, 196 F.3d 778, 781–82 (7th Cir. 1999); *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). Second, we and one other

circuit have held that the limitation on recovery governs all claims for punitive damages, *see Al–Amin*, 637 F.3d at 1199; *Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998), but nine circuits have held that, as my dissenting colleague argues, the special deterrent role of punitive damages means that they are not "for . . . injury suffered," emotional or otherwise. *See King*, 788 F.3d at 216–17; *Kuperman v. Wrenn*, 645 F.3d 69, 73 & n.5 (1st Cir. 2011); *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007); *Royal*, 375 F.3d at 723; *Calhoun v. DeTella*, 319 F.3d 936, 941–42 (7th Cir. 2003); *Oliver v. Keller*, 289 F.3d 623, 629–30 (9th Cir. 2002); *Thompson v. Carter*, 284 F.3d 411, 418 (2d Cir. 2002); *Searles*, 251 F.3d at 881; *Allah*, 226 F.3d at 251–52.

At present, I am not ready to stake a firm position about whether—or to what extent—our precedents are incorrect. It is not easy to say precisely what it means for a claim to be 'for' mental or emotional injury. To be confident in our answer, we would have to think carefully about the conceptual relationship between rights, injuries, and damages; conceivably, the correct application of section 1997e(e) might vary depending on the nature of the prisoner's claim. For example, I am inclined to agree with my dissenting colleague that punitive damages for violations of what the Supreme Court has called "'absolute' rights"—that is, those rights for which no proof of consequential harm is required to establish a violation, *Carey v. Piphus*, 435 U.S. 247, 266 (1978)—are not "for

5

mental or emotional injury suffered" any more than are nominal damages in the same context. I am also inclined to agree that punitive damages for the violation of a nonabsolute right are not "for mental or emotional injury" when the harm necessary to establish a violation is not mental or emotional in nature. But some nonabsolute claims might require a different analysis. For instance, some claims might, by their very nature, require that the defendant have inflicted mental or emotional harm. And in those circumstances, where there can be no liability of any kind without proof of such harm, it seems plausible (but not certain) to me that even nominal and punitive damages might fairly be considered "for mental or emotional injury."

Whatever the right answers to these questions may be, nothing that we could say about them in this appeal would make a difference to the parties. To see why, let us review the procedural history. After a jury returned a verdict that doomed his First Amendment retaliation claim, Carter raised two arguments that he was entitled to a new trial, both of which the panel correctly rejected.

First, Carter challenged an allegedly erroneous jury instruction. Because Carter had not objected to the instruction at trial, we could not have granted a new trial on this ground without finding plain error. *See* Panel Op. at 10. The panel held that there was no error, plain or otherwise, *see id.*, and my dissenting colleague does not quarrel with that holding.

6

Second, Carter argued that the district court abused its discretion when it denied his motion for appointed counsel, but the panel persuasively explained that the district court made a reasonable decision. *See* Panel Op. at 14–18. And my dissenting colleague does not suggest that we should reconsider that holding.

Separately, Carter argued that the district court erred when, following our precedents, it ruled before trial that he could not recover either compensatory or punitive damages because he had not alleged a physical injury. But Carter acknowledged—as he had to—that this issue mattered only if he was entitled to a new trial on at least one of the two grounds he advanced. As he puts it, "*If Mr. Carter prevails on re-trial . . .* [he] should be permitted to recover both compensatory and punitive damages."

Because the panel had rejected both of Carter's arguments for a new trial, its discussion of the punitive-damages issue was arguably dictum. After all, that issue made no conceivable difference to the disposition of the appeal—the panel would have affirmed without remand even if it had agreed with Carter's remedial arguments and we had no binding precedent on point. True, to constitute a holding, a conclusion need not be absolutely necessary to the disposition, as the example of alternative holdings illustrates. *See* Bryan A. Garner et al., *The Law of Judicial Precedent* § 10, 122–25 (2016). But the punitive-damages issue in this appeal was more than superfluous; it was irrelevant to anything the panel had left to decide

7

after concluding that Carter was not entitled to a new trial. In similar circumstances, we have often used the word "moot" to describe issues that, thanks to our resolution of other issues, no longer possess any possible practical significance. *See, e.g.*, *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 964 (11th Cir. 2016); *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014).

Legal questions are best debated and decided in cases with real stakes. *See Baker v. Carr*, 369 U.S. 186, 204 (1962) (explaining that litigants with "personal stake[s] . . . assure that concrete adverseness which sharpens the presentation of issues"); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1315 (11th Cir. 1998) (Carnes, J., concurring specially) ("It is the nature of judges, like most human beings, to be more cautious, deliberative, and judicious—characteristics that should be brought to bear in deciding important issues—when what [we] say makes a difference to someone before [us]."). And this principle bears special significance when the legal questions in play are intricate—or more intricate than they appear at first glance—which may be true of the questions Carter has raised about the interpretation of section 1997e(e). After all, they have given rise to two circuit splits.

For these reasons, although I might be amenable to reconsidering our interpretation of section 1997e(e) in an appropriate appeal, I think it is imprudent

to do so in this appeal where the issue is as good as moot. If any question we could consider in this appeal is one "of exceptional importance," 11th Cir. R. 35-3, then surely some appeal will arise in which how we answer that question might make a difference to the parties.

MARTIN, Circuit Judge, dissenting from the denial of rehearing en banc[1]:

In every other circuit, inmates can seek compensatory damages or punitive damages or both for violations of their First Amendment rights. Not so in the Eleventh Circuit. This Court's precedent interprets the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, to bar inmates from seeking compensatory or punitive damages for First Amendment claims when those claims do not include a physical injury. Al-Amin v. Smith, 637 F.3d 1192, 1198–99 (11th Cir. 2011). But First Amendment violations are not likely to come accompanied by physical injury. Thus our precedent leaves inmates with nominal damages as their only remedy for violations of this bedrock constitutional right, no matter how egregious the violation.

It would be one thing if the PLRA required this result. But it does not. Our precedent departed from the PLRA's plain language, and its error has become entrenched. At this point, any panel of this Court can simply cite to Al-Amin and thereby dispose of an inmate's compensatory or punitive damages claim, with no thought given to whether the statute actually requires this result. I hoped the en banc Court would take the opportunity presented by Demetruis Carter's case to change course, since the panel opinion ruled against him specifically on this issue.

---

[1] Although they did not think Demetruis Carter's case was a good vehicle for en banc review, Judges Adalberto Jordan and Jill Pryor agree with the statutory analysis set forth in this dissent and believe that the issues are worthy of en banc consideration in an appropriate case.

See Carter v. Allen, 762 F. App'x 827, 836 (11th Cir. 2019) (per curiam) (unpublished) (rejecting Mr. Carter's argument for punitive damages). Now that the en banc Court has declined to reconsider Mr. Carter's panel opinion, it will continue to prop up our circuit's rule withholding compensatory or punitive damages on inmates' First Amendment claims. This rule will come from Mr. Carter's case despite the fact that a jury rejected his First Amendment claim and never considered the issue of damages associated with a First Amendment violation. Id. at 832–34. And for inmates who do win their First Amendment claims, our precedent will continue to bar them from receiving damages awards that the statute, on its face, allows.

This should not be. I trust that future litigants will call this issue to the attention of our en banc Court in cases where inmates' claims warrant compensatory or punitive damages. This will allow our Court to align our jurisprudence with the text of the PLRA. Until we do, this Court will deny inmates relief that Congress did not intend to preclude.

**I.**

Enacted "[i]n an effort to stem the flood of prisoner lawsuits in federal court," Harris v. Garner ("Harris II"), 216 F.3d 970, 972 (11th Cir. 2000) (en banc), the PLRA imposes a "[l]imitation on recovery" in federal civil actions brought by inmates, see 42 U.S.C. § 1997e(e). This limitation reads:

11

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . .

Id. (emphasis added).

It is this provision that our Court has interpreted to preclude compensatory and punitive damages for any claim absent physical injury. See Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated in part on other grounds by Sossamon v. Texas, 563 U.S. 277, 131 S. Ct. 1651 (2011). To see how our Court went astray, one need only review our case law interpreting this provision.

Among the first cases that called upon our Court to interpret § 1997e(e) was Harris v. Garner, 190 F.3d 1279 (11th Cir.) ("Harris I"), reh'g en banc granted, 197 F.3d 1059 (11th Cir. 1999), opinion reinstated in relevant part by Harris II, 216 F.3d at 970. In Harris I, the Court rejected a constitutional challenge to the PLRA. 190 F.3d at 1287–90. Along the way, it affirmed the dismissal of the claims made by eleven inmates seeking compensatory and punitive damages against employees of the Georgia Department of Corrections. Id. But it did not address whether the specific injuries asserted were mental or emotional. See generally id.

Our Court again affirmed the dismissal of a claim for punitive damages in Napier v. Preslicka, 314 F.3d 528 (11th Cir. 2002), reh'g en banc denied, 331 F.3d 1189 (11th Cir. 2003), this time without discussion. Id. at 534. Mr. Napier sought punitive damages against police officers who mistakenly arrested him for a charge

12

other than the one for which he was already incarcerated.  See id. at 531.  The district court denied Mr. Napier's claim, and the panel on appeal affirmed dismissal of the entire claim, thus "conclud[ing], albeit sub silentio, that Napier's punitive claim was barred by" the PLRA.  Al-Amin, 637 F.3d at 1198–99 (describing the Napier decision).[2]  Then in 2007, the Smith panel cited Napier for the proposition that compensatory and punitive damages "are precluded under the PLRA" absent physical injury.  Smith, 502 F.3d at 1271.  Ultimately in 2011, the Al-Amin panel considered itself bound to hold that the PLRA prohibits suits for compensatory or punitive damages absent physical injury.  637 F.3d at 1198–99.  Finally, this year (2019), Mr. Carter's panel considered itself bound by Al-Amin and its predecessors to reject Mr. Carter's claim for punitive damages.  Carter, 762 F. App'x at 836.

Yet a review of this precedent demonstrates that none of it engages with what it means for a claim to be "for mental or emotional injury."  See Al-Amin, 637 F.3d at 1197 (noting Harris I "did not distinguish between cases in which a prisoner pleads a 'mental or emotional injury' and those where a prisoner does not so plead").  Properly interpreting this language, it becomes apparent our Court's

---

[2] The issue in Napier was whether the PLRA's "in custody" requirement applies to claims that are "unrelated to the current incarceration of that plaintiff."  314 F.3d at 530, 532.  The Court said it does.  Id. at 533–34.

13

precedent is wrong.   I will first address punitive damages and then turn to compensatory damages.

## II.

The plain text of the PLRA does not bar inmates from seeking punitive damages for First Amendment claims.  And the text, of course, is where all statutory interpretation begins.  See Daker v. Comm'r, Ga. Dep't of Corr., 820 F.3d 1278, 1283 (11th Cir. 2016).

I interpret the text as follows.  To begin, the title of the relevant PLRA sub-section tells us that the provision at issue acts as a "[l]imitation on recovery."  42 U.S.C. § 1997e(e); see also Harris I, 190 F.3d at 1288 & n.8.  And all appear to agree that this limitation "is best read as only a limitation on a damages remedy."  Harris I, 190 F.3d at 1287.  But the limitation is itself limited, as the phrase "for mental or emotional injury" in the statute makes clear.  42 U.S.C. § 1997e(e).  The word "for" is a function word, indicating the purpose or aim of an act.  Webster's New College Dictionary 445 (3d ed. 2008).  The full prepositional phrase ("for mental or emotional injury suffered while in custody") modifies the verb "brought."  And this Court has held that "brought" refers to "the initiation of legal proceedings in a suit."  Harris II, 216 F.3d at 973 (quoting Bring, Black's Law Dictionary 192 (6th ed. 1990)).  Thus, accounting for the prepositional phrase, the

14

PLRA applies only to federal civil actions brought with the purpose of remedying mental or emotional injury.

Punitive damages are not for the purpose of remedying mental or emotional injury. Rather, the purpose of punitive damages "is to punish the defendant for his willful or malicious conduct and to deter others from similar behavior." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 306 n.9, 106 S. Ct. 2537, 2542 n.9 (1986) (citing Restatement (Second) of Torts § 908(1) (1979)). The Supreme Court has made clear that § 1983 permits punitive damages in cases involving "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law." Smith v. Wade, 461 U.S. 30, 51, 103 S. Ct. 1625, 1637 (1983). Bottom line: punitive damages are not "for" redress of mental or emotional injury; they are "for" deterrence and punishment, regardless of the type of injury. The plain text of the PLRA does not preclude damages claims for deterrence and punishment. Our precedent holding the PLRA bars punitive damages strays from the text of the statute, and is thus mistaken.

This Court has otherwise implemented the idea that the PLRA bars only claims "for" mental or emotional injury. A panel of this Court adopted a reading similar to the one I advocate for here, holding that the PLRA does not bar nominal damages. See Brooks v. Warden, 800 F.3d 1295, 1307–08 (11th Cir. 2015). Like punitive damages, nominal damages do not compensate for concrete harms caused

by wrongful conduct.  Rather, they "vindicate[] deprivations of certain 'absolute' rights that are not shown to have caused actual injury."  Carey v. Piphus, 435 U.S. 247, 266, 98 S. Ct. 1042, 1053 (1978).  Due to "the importance to organized society that those rights be scrupulously observed," the Supreme Court has held that the violation of certain constitutional rights is "actionable for nominal damages without proof of actual injury."  Id. at 266, 98 S. Ct. at 1054.  Following Carey and a long line of this Court's precedent holding that nominal damages are available in § 1983 actions, Brooks held inmates may seek nominal damages to vindicate their constitutional rights.  800 F.3d at 1307–08.  Its rationale?  That a "nominal damages claim is not brought for mental or emotional injury."  800 F.3d at 1308 (quotation marks omitted and emphasis added).  The Brooks panel's logic applies with equal force to punitive damages claims.

Our Court's earlier PLRA precedent strayed from the statute's text by giving too little interpretive weight to the phrase "for mental or emotional injury." See Al-Amin, 637 F.3d at 1197 (noting the Harris I Court "focused only on the statute's physical injury requirement, and did not distinguish between cases in which a prisoner pleads a 'mental or emotional injury' and those where a prisoner does not so plead").  This phrase qualifies the reach of § 1997e(e)'s limitation on recovery.  An inmate need not allege physical injury in order to bring a viable punitive damages claim.  The physical injury requirement applies only in actions

16

seeking damages for mental or emotional injury. Our Court has been wrong when it suggested otherwise.

Al-Amin tried to justify Harris I's misreading of the statute by saying that limiting § 1997e(e) to suits for mental or emotional injury would lead to "illogical results" based on "artful pleading." Al-Amin, 637 F.3d at 1197 n.5. The panel in Al-Amin felt that reading the limitation on recovery to apply only to mental and emotional injury would allow plaintiffs who did not plead mental or emotional injury to seek punitive damages while cutting off punitive damages for those who did. Id. This is not so. Again, punitive damages are not a remedy "for" mental or emotional injury. To assert a viable punitive damages claim, inmates must plead callous disregard for or an intentional violation of a constitutional right, not a mental or emotional injury. Thus, both the inmate who pleads mental or emotional injury and the inmate who doesn't can seek punitive damages, provided both properly plead the claim. And neither can recover for mental or emotional injury absent physical injury. Thus, under the correct interpretation of the PLRA, both inmates would be treated the same. Nothing illogical about that.

In fact, there are logical reasons to distinguish claims for punitive damages from claims for mental or emotional injury. Requiring physical injury in cases seeking damages for mental or emotional injury reflects Congress's belief "that the existence of a physical injury would distinguish meritorious prisoner claims of

17

emotional injury from frivolous ones; the physical injury would, in essence, vouch for the asserted emotional injury." Dawes v. Walker, 239 F.3d 489, 495 (2d Cir. 2001) (Walker, C.J., writing separately), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002). But Congress's sense that physical injury would, in essence, "prove" the existence of a more easily faked mental or emotional injury does not mean it also saw the need for a physical injury to "prove" a bad actor intentionally violated an inmate's constitutional rights. An inmate cannot fake someone else's intent.

Not surprisingly, this error in the way our precedent has developed has made us an outlier. Our Court is one of just two circuits to have held the PLRA bars punitive damages absent physical injury. The other, the D.C. Circuit, gave the sum total of its analysis in one sentence: "[M]uch if not all of Congress's evident intent would be thwarted if prisoners could surmount [the PLRA] simply by adding a claim for punitive damages and an assertion that the defendant acted maliciously." Davis v. District of Columbia, 158 F.3d 1342, 1348 (D.C. Cir. 1998). The D.C. Circuit's view on the matter is belied by the statute's text, which places no bar in the way of inmates seeking punitive damages. The Davis court's purposive interpretation of the statute—Congress meant to foreclose most inmate suits, so they must also have meant to foreclose suits for punitive damages—cannot displace the plain text of the statute.

18

For every other circuit to have addressed the issue, the PLRA does not bar inmates without physical injury from seeking punitive damages based on the violation of a constitutional right.  See King v. Zamiara, 788 F.3d 207, 216–17 (6th Cir. 2015); Kuperman v. Wrenn, 645 F.3d 69, 73 & n.5 (1st Cir. 2011); Hutchins v. McDaniels, 512 F.3d 193, 196–98 (5th Cir. 2007) (per curiam); Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004); Calhoun v. DeTella, 319 F.3d 936, 942 (7th Cir. 2003); Oliver v. Keller, 289 F.3d 623, 629–30 (9th Cir. 2002); Thompson v. Carter, 284 F.3d 411, 418 (2d Cir. 2002); Searles v. Van Bebber, 251 F.3d 869, 880–81 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 251–52 (3d Cir. 2000). I regret the en banc Court did not take this opportunity to join the majority of our sister circuits.

### III.

Although Mr. Carter did not seek compensatory damages, and so this issue was not squarely before the en banc Court, everything I have said up to now applies with equal force to claims for compensatory damages.  The PLRA does not bar all claims for compensatory damages.  Contra Smith, 502 F.3d at 1271 (holding that "[i]t is clear from our case law . . . that" the PLRA precludes an award of compensatory damages absent physical injury).  This, too, is so as a matter of the PLRA's plain text.  And again, our Court's failure to engage with

what it means for a damages claim to be "for mental or emotional injury" has led us astray.

The key statutory language here again is the qualifier to the limitation on recovery. The PLRA only bars claims "for mental or emotional injury" in the absence of physical injury. 42 U.S.C. § 1997e(e). To be sure, courts remedy mental or emotional injuries with compensatory damages. See Akouri v. State of Fla. Dep't of Transp., 408 F.3d 1338, 1345 (11th Cir. 2005). But those are not the only injuries that can be remedied by compensatory damages. Compensatory damages are also traditionally available to remedy lost wages, medical expenses, and any other "concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519 (2003) (quotation marks omitted). Further, "courts frequently allow plaintiffs in Section 1983 actions to recover damages for constitutional violations that fall outside the domain of common-law injuries." Aref v. Lynch, 833 F.3d 242, 265 (D.C. Cir. 2016) (collecting cases); see Kerman v. City of New York, 374 F.3d 93, 130 (2d Cir. 2004) (affirming compensatory damages award for the injury of physical detention caused by a Fourth Amendment violation); City of Watseka v. Ill. Pub. Action Council, 796 F.2d 1547, 1559 (7th Cir. 1986), aff'd, 479 U.S. 1048, 107 S. Ct. 919 (1987) (affirming compensatory damages award for First Amendment injury based on the inability to express views

20

due to anti-soliciting ordinance); cf. H.C. ex rel. Hewett v. Jarrard, 786 F.2d 1080, 1087–89 (11th Cir. 1986) ("Compensatory damages are appropriate where juveniles have wrongfully received solitary confinement.").

The Supreme Court has recognized that constitutional violations can be compensable without mental or emotional injury. See, e.g., Memphis Cmty. Sch. Dist., 477 U.S. at 311 n.14, 106 S. Ct. at 2545 n.14 (noting that denial of the right to vote in a particular election "might be compensated through substantial money damages"). And while the denial of a constitutional right might also cause compensable distress or humiliation, see Carey, 435 U.S. at 263–64, 98 S. Ct. at 1052, it does not follow that distress or humiliation is the only injury that can result from a constitutional violation. Privacy, the exchange of ideas, and due process all hold value in their own right. I understand a person cannot obtain money damages by merely invoking the abstract value of these rights to our society. See Memphis Cmty. Sch. Dist., 477 U.S. at 308, 106 S. Ct. at 2543. But we should not belittle such constitutional rights by saying they are worth nothing more than the mental distress they may cause. If, as the Supreme Court has said, loss of the right to vote in a particular election is compensable, then surely the lost opportunity to speak, a governmental invasion of individual privacy, or an arbitrary deprivation of a person's property may be as well.

21

Our precedent equates mental or emotional injury with all compensatory damage claims. But this equation broadens the meaning of the phrase "mental or emotional injury" far beyond what those words can bear. See Aref, 833 F.3d at 263. "[N]ot every non-physical injury is by default a mental or emotional injury." Id. at 264. Constitutional violations may cause inmates actual injuries besides mental or emotional injury. See, e.g., H.C., 786 F.2d at 1087–89. This being the case, Congress would not have specified "mental or emotional injury" if it intended to preclude damages for any injury in the absence of physical injury. See Marx v. Gen. Revenue Corp., 568 U.S. 371, 376, 133 S. Ct. 1166, 1172 (2013) ("As in all statutory construction cases, we assume that the ordinary meaning of the statutory language accurately expresses the legislative purpose." (alterations adopted) (quotation marks omitted)). We should abandon our earlier precedent and instead do what the statute commands: determine whether the injury asserted is mental or emotional and enforce the PLRA's limitation on recovery only if it is.

Five of our sister circuits have held the PLRA does not bar all compensatory damages claims. See Wilcox v. Brown, 877 F.3d 161, 170 (4th Cir. 2017); Aref, 833 F.3d at 265; King, 788 F.3d at 213; Toliver v. City of New York, 530 F. App'x 90, 93 n.2 (2d Cir. 2013) (unpublished) (summary order); Oliver, 289 F.3d at 629–30. Notably, our lone companion in saying the PLRA bars punitive damages is one of them. See Aref, 833 F.3d at 265. Given the split of authority and the strong

22

textual arguments against our compensatory damages rule, our Court would do well to reconsider our approach on that issue. In the same way our precedent has failed to engage with whether the text of the PLRA bars punitive damages, none of our precedent has engaged with whether compensatory damages might be available "for" injuries besides mental and emotional ones.

## IV.

"A prisoner does not shed . . . basic First Amendment rights at the prison gate." Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 139, 97 S. Ct. 2532, 2545 (1977) (Marshall, J., dissenting) (alteration in original) (quotation marks omitted). Yet those rights require remedies in order to enforce them. Congress of course has the power to define the remedies available in federal court, and it did so with the PLRA. See Harris I, 190 F.3d at 1287–90. But this Court has interpreted the PLRA to withdraw far more remedies from prisoners than Congress required. I look forward to the time when this Court will reconsider our PLRA precedent.